IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Satterfield and Pontikes Construction, Inc.

Plaintiff,

Civil Action File No:
3:15-cv-00568-MCR-EMT

vs.

Southeast Contractors of North Florida, Inc.,
K&T Stoneworks, Inc. and Peaden, LLC

Defendants.
_______________________________________________/

# DEFENDANT SOUTHEAST CONTRACTORS OF NORTH FLORIDA, INC.'S COUNTERCLAIM

COMES NOW, the separate Defendant, Southeast Contractors of North Florida, Inc. ("Southeast"), by and through undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure and 28 U.S.C. §1367(a), files its Counterclaim against Plaintiff, Satterfield and Pontikes Construction, Inc. ("S&P"), as follows:

## Parties, Jurisdiction and Venue

1. Southeast is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 401 Mountain Drive, Destin, Florida 32541.

2. S&P is a corporation organized and existing under the laws of



Larry H. Hipsh, III, P.A. - Attorney & Counselor at Law - 11 Racetrack Road NE, Suite F-4
Fort Walton Beach, Florida 32547 - Telephone 850/830-4662 - Facsimile 850/462-9330

the State of Texas with its principal place of business located at 11000 Equity Drive, Suite 100, Houston, Texas 77041. At all times pertinent to this civil action, S&P was duly qualified to do business in the State of Florida.

3. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and the property at issue is situated in this judicial district.

## Factual Predicate

5. At all times pertinent to this civil action, S&P was the general contractor for construction of the new BRAC Combat System Officer Bachelor Housing at the Pensacola Naval Air Station, located at 451 BOQ Road, NAS Pensacola, Pensacola, Florida 32508 (the "Project").

6. Southeast was subcontracted by S&P to perform roofing work on the Project, as such scope of work (the "Scope of Work") is more particularly described by the subcontract attached to the Complaint as Exhibit "1" (the "Subcontract").

7. Southeast mobilized its workforce on the Project on or around November 15, 2011, more than a month after it was originally scheduled to mobilize, due to issues with the structural supports for the metal decking on each of the Project's buildings, which steel supports were a prerequisite for Southeast commencing its Scope of Work (the "Structural Delay"). The Structural Delay contributed to the delay in the Project's completion.

8. On or around July 7, 2011, Southeast submitted its first roofing color samples to S&P for approval, with an alternative roofing color sample submitted on August 23, 2011. After Southeast inquired with S&P numerous times regarding the selection of the roofing color, and even detailed the turnaround time for the roofing manufacturer to deliver the materials, S&P waited until January 18, 2012 before it selected a roofing color (the "Selection Delay"). The Selection Delay by S&P caused substantial delay to the Project's completion.

9. Further, the architect for the Project, hired by S&P, Huitt-Zollars, Inc. ("Huitt"), requested multiple revisions to Southeast's submittals, which such revisions were, a majority of the time, outside of the Scope of Work (the "Revision Delay"). It was not until February 8, 2012 when S&P, through Huitt, gave final approval to Southeast's submittals.

The Revision Delay by S&P's architect, Huitt, only added to the previous delays on the Project.

10. As a result of the postponements on the Project from the Structural Delay, the Selection Delay, and the Revision Delay, S&P, both verbally and in writing, beginning in late January of 2012 and multiple times thereafter, authorized Southeast to accelerate completion of it's Scope of Work on the Project.

11. Specifically, S&P agreed, through promised change orders to the Subcontract, to compensate Southeast for the following: (i) rental of additional equipment, which amounted to $9,469.90 (including an agreed upon 15% overhead charge); (ii) overtime for Southeast's workforce, which amounted to $21,993.75; (iii) time and labor for temporary fixes and permanent revisions for design issues, resulting from water intrusion, which amounted to $50,444.62; (iv) 15% overhead charges for Southeast's administration of two (2) additional roofing companies, Specialty Roofers, Inc.[1] and Mike Goodson Roofing, Inc.[2], which amounted to $9,104.00; and (v) $22,110.00 resulting from the difference between what Specialty

[1] Approved by S&P, and hired directly by S&P.
[2] Approved by S&P, but hired directly by Southeast.

Roofers, Inc. and Mike Goodson Roofing, Inc. were paid[3] (which amount was used as a deductive change order to the Subcontract) and the labor value attributed to the same work on the Subcontract's schedule of values (collectively, these five (5) Subcontract revisions, resulting from the Structural Delay, the Selection Delay, and the Revision Delay, will be hereinafter known as the "Subcontract Revisions"). These damages total $113,122.27 and remain unpaid by S&P.

12. In addition to the damages asserted in Paragraph 11, above, resulting from the Subcontract Revisions, Southeast is still owed $18,659.09 under the Subcontract, increasing Southeast's damages to $131,781.36, all of which remains unpaid by S&P.

**First Claim for Relief – Breach of Contract**

13. Southeast re-alleges and incorporates paragraphs 1-12, as if set forth fully herein.

14. Under the terms of the Subcontract entered into between Southeast and S&P, including the Subcontract Revisions, Southeast was guaranteed compensation in exchange for its performance of the Scope of Work and the Subcontract Revisions.

---

[3] A higher amount, due to the need to immediately mobilize, and the overtime attributable for each roofing contractors' crew.

15. Southeast performed all obligations under the Subcontract, its Scope of Work, and the Subcontract Revisions.

16. S&P has recognized Southeast's performance of the Scope of Work and/or the Subcontract Revisions, but has breached the Subcontract by not compensating Southeast for the services rendered and/or the expenses incurred for the Scope of Work and the Subcontract Revisions.

17. As a result of S&P's breach for failure to timely submit remuneration to Southeast under the Subcontract and/or the Subcontract Revisions, Southeast has been damaged.

## Second Claim for Relief – Breach of the Implied Covenant of Good Faith and Fair Dealing

18. Southeast re-alleges and incorporates paragraphs 1-12, as if set forth fully herein.

19. Southeast and S&P were parties to a written contract, the Subcontract.

20. The Subcontract is ambiguous about the permissibility or scope of the Subcontract Revisions.

21. S&P, through a conscious and deliberate act, has failed or refused to discharge its contractual responsibilities, which unfairly frustrates the Subcontract's purposes and disappoints Southeast's expectations.

22. S&P's failure to timely submit remuneration to Southeast under the Subcontract and/or the Subcontract Revisions deprives Southeast of the Subcontract's benefits.

23. As a result of S&P's breach for failure to timely submit remuneration to Southeast under the Subcontract and/or the Subcontract Revisions, Southeast has been damaged.

**Third, Alternative Claim for Relief – Promissory Estoppel**

24. Southeast re-alleges and incorporates paragraphs 1-12, as if set forth fully herein.

25. This claim for promissory estoppel is alternative to the first two (2) claims for relief.

26. Southeast detrimentally relied on S&P's promise that S&P would increase the Subcontract value, through change orders, in exchange for Southeast performing the Subcontract Revisions.

27. S&P reasonably should have expected the promise to induce reliance in the form of action on the part of Southeast.



Larry H. Hipsh, III, P.A. - Attorney & Counselor at Law - 11 Racetrack Road NE, Suite F-4
Fort Walton Beach, Florida 32547 - Telephone 850/830-4662 - Facsimile 850/462-9330

28. The injustice done to Southeast by performing the Subcontract Revisions can only be avoided by enforcement of the promise against S&P.

**Fourth, Alternative Claim for Relief – Quantum Meruit**

29. Southeast re-alleges and incorporates paragraphs 1-12, as if set forth fully herein.

30. This claim for quantum meruit is alternative to the first two (2) claims for relief.

31. S&P acquiesced in the provision of Southeast performing the Subcontract Revisions.

32. S&P was aware that Southeast expected to be compensated for performing the Subcontract Revisions.

33. S&P was unjustly enriched by Southeast's performance of the Subcontract Revisions, as follows:

a. Southeast, by its performance under the Subcontract and of the Subcontract Revisions, has conferred a benefit to S&P, who has knowledge of the benefit.

b. S&P has voluntarily accepted and retained the benefit conferred.



Larry H. Hipsh, III, P.A. - Attorney & Counselor at Law - 11 Racetrack Road NE, Suite F-4
Fort Walton Beach, Florida 32547 - Telephone 850/830-4662 - Facsimile 850/462-9330

c. The circumstances are such that it would be inequitable for S&P to retain the benefit without paying the value thereof to Southeast.

**Fifth, Alternative Claim for Relief – Unjust Enrichment**

34. Southeast re-alleges and incorporates paragraphs 1-12, as if set forth fully herein.

35. This claim for unjust enrichment is alternative to the first two (2) claims for relief.

36. Southeast, by its performance under the Subcontract and of the Subcontract Revisions, has conferred a benefit to S&P, who has knowledge of the benefit.

37. S&P has voluntarily accepted and retained the benefit conferred.

38. The circumstances are such that it would be inequitable for S&P to retain the benefit without paying the value thereof to Southeast.

**WHEREFORE**, having fully set forth its claims for relief, Southeast respectfully prays this Court:

A. Enter judgment in Southeast's favor, against S&P, for Southeast's damages incurred as a result of S&P's breach of contract, in the total amount of $131,781.36;

B. Enter judgment in Southeast's favor, against S&P, for Southeast's damages incurred as a result of S&P's breach of the implied covenant of good faith and fair dealings;

C. Alternatively, enter judgment in Southeast's favor, against S&P, enforcing S&P's promise to compensate Southeast for Southeast's performance of the Subcontract Revisions;

D. Alternatively, enter judgment in Southeast's favor, against S&P, for the reasonable value of the labor performed by Southeast and the market value of the materials furnished by Southeast;

E. Alternatively, enter judgment in Southeast's favor, against S&P, for Southeast's damages incurred as a result of S&P's unjust enrichment;

F. That all costs associated with this civil action be taxed to S&P;

G. For prejudgment interest, attorney's fees, and other compensation allowable under Florida law; and

H. For such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Southeast demands a trial by jury on the liability and damages issues set forth above.

**LARRY H. HIPSH, III, P.A.**

*/s/ Larry H. Hipsh, III*

**Larry H. Hipsh, III, Esq.**
Florida Bar No. 014392
Post Office Box 4897
Fort Walton Beach, Florida 32549
Telephone: 850/830-4662
Facsimile: 850/462-9330
Email: larry@hipshlawfirm.com
*Counsel for Southeast Contractors of North Florida, Inc. – As to Counterclaim Only*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 19, 2016, the foregoing was filed electronically with the Clerk of Court using the CM/ECF that will send notice of electronic filing to the following counsel of record:

Jefferson C. McConnaughey, Esq.
Cozen O'Connor
Promenade II, Suite 400
1230 Peachtree Street NE
Atlanta, GA 30309
jmcconnaughey@cozen.com
dbessho@cozen.com
*Counsel for Plaintiffs*

*/s/ Larry H. Hipsh, III*
**Larry H. Hipsh, III, Esq.**